**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| VICTOR M. CARDENAS RAMIREZ,<br>Petitioner,<br>v.<br>FIELD OFFICE DIRECTOR THOMAS GILES, et al.,<br>Respondents. | Case No. EDCV 26-6771-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On November 11, 2026, Victor M. Cardenas Ramirez (A# 240-799-366) ("Petitioner"), an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Desert View Annex in Adelanto, California, who is represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") seeking release on the grounds that his arrest on October 18, 2025, and ongoing detention violate the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Immigration and Nationality Act ("INA") and implementing

regulations. (Dkt. No. 1). The Petition was accompanied by a Motion for Order to Show Cause ("OSC"). (Dkt. No. 7).

On November 19, 2026, Respondents filed an Answer to the Petition, arguing that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and that he did not exhaust administrative remedies by appealing the immigration judge's denial of bond to the Board of Immigration Appeals ("BIA"). (Dkt. No. 10).

For the reasons stated below, the Court grants the Petition, orders Petitioner's immediate release from detention, and denies the Motion for OSC as moot.[1]

**BACKGROUND**

Petitioner is a Mexican citizen who entered the United States without inspection in 2015, left in 2019, and then re-entered without inspection in 2021. (See Answer Ex. 4 at 1). He has remained here since. (Id.). In July 2022, Petitioner submitted a 1-589 application for asylum and withholding of removal to United States Citizenship and Immigration Services ("USCIS"). (Petition ¶ 10). On September 2, 2022, USCIS issued a written Acknowledgment of Receipt stating that Petitioner's application "was received and is pending as of [July 22, 2022,]" and Petitioner "may remain in the U.S. until [his] asylum application is decided." (Petition Ex. D). Petitioner subsequently gave biometrics for the asylum application.

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4-6, 8).

(See Petition ¶ 10, Ex. D at 2). USCIS then granted Petitioner employment authorization, and the asylum application remained pending. (See Petition ¶ 11, Ex. F at 3, 6).

Petitioner has substantial family and community ties. (See Petition ¶¶ 7, 11, 38-40). His wife is a United States citizen, as is their young daughter. (Petition ¶¶ 7, 38). Petitioner and his wife have worked to support their household and have filed taxes. (Petition ¶ 40). Petitioner's only criminal history apparently consists of a June 2023 conviction in Riverside County Superior Court for driving without a license (Cal. Vehicle Code § 12500(a)), for which he paid all fines. (Petition ¶ 42, Ex. J).

On October 18, 2025, Petitioner was arrested by ICE without a warrant while he was hunting with his father, brother, and two friends in the Acton mountains near Palmdale, California. (Petition ¶¶ 1, 9, 29-31; Answer Ex. 1 at 2). Petitioner had a hunting license and a registered firearm that was locked away at the time of the arrest and seizure. (Id. ¶ 30). He cooperated with the officers, produced his work permit, and explained his pending asylum application, and he received no explanation for the arrest. (Id.). He was transported to the Desert View Annex in Adelanto. (See Petition ¶¶ 1, 9). Two days later, on October 20, 2025, he was served with a Notice to Appear charging him as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). (Petition ¶ 12, Ex. A; Answer Ex. 1 at 3).

In December 2025, Petitioner's U.S. citizen wife submitted to USCIS an I-130 Petition for Alien Relative, a family visa petition seeking recognition of their qualifying relationship for an immigration benefit. (Petition ¶ 11, Ex. F at 1).

On January 23, 2026, an immigration judge denied asylum and withholding of removal and ordered Petitioner removed to Mexico. (Answer Ex. 2). Petitioner appealed to the BIA, and the appeal is still pending. (See Answer Ex. 3).

On March 25, 2026, Petitioner was brought before an immigration judge for a custody determination hearing, but the immigration judge denied relief based on his finding that he lacked jurisdiction under the BIA's decision in In re Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). (Petition Ex. B).

On April 28, 2026, when Petitioner had been detained for over six months, he was provided a "Rodriguez" bond hearing before an immigration judge, who denied bond upon concluding that Petitioner was a flight risk.[2] (Petition Ex. C).

---

[2] See Rodriguez v. Holder, Case No. CV 07-03239-TJH (RNB), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018). Under the injunction in the Rodriguez class action, which remains in force in this District, a noncitizen detained under 8 U.S.C. § 1226 for over six months is entitled to a bond hearing at which the government has the burden to justify continued detention by proving by clear and convincing evidence that the noncitizen is a flight risk or danger to the community. See 2013 WL 5229795, at *2-3; see also Rodriguez v. Marin, 2020 WL 13348414, at *1 (C.D. Cal. Mar.

Petitioner thus remains in immigration detention at this time, more than a year since his arrest on October 18, 2025. His detention has caused serious hardship for his family. Among other difficulties, his young daughter developed an adjustment disorder involving disturbed emotions and conduct, for which she has been receiving counseling since November 15, 2025. (Petition ¶¶ 7, 39).

**DISCUSSION**

For the reasons explained below, Petitioner is entitled to release from custody because his detention for over a year violates due process.[3]

---

9, 2020) (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)); Rodriguez v. Marin, 2020 WL 13724475, at *1 (C.D. Cal. May 28, 2020) (denying motion to vacate preliminary injunction and decertify the class). On October 19, 2021, the Ninth Circuit reversed the district court in Rodriguez and remanded with instruction to vacate the injunction. See Rodriguez v. Barr, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). However, the mandate has not issued because the case is currently pending a petition for panel rehearing or rehearing en banc. (See Ninth Circuit Case No. 20-55770).

[3] To the extent that Respondents argue the Petition should be denied for lack of exhaustion, that prudential requirement is appropriately waived here because Petitioner would be significantly harmed if forced to wait for appellate review, and no appellate record or agency expertise is needed to review the issues presented here. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (courts have discretion to waive prudential exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." (internal quotations and citations omitted)).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest.").

Respondents argue that Petitioner "has not gained a vested liberty interest" because ICE had never detained him prior to his arrest on October 18, 2025. (Answer at 5-6). It is true that courts in this district and elsewhere have held that a noncitizen's release from immigration custody gives "rise to 'the most elemental of liberty interests – the interest in being free from physical

detention by one's own government.'" Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026). However, contrary to Respondents' view, it is not only those noncitizens whom the government has previously detained and then released into the United States who have acquired a liberty interest in their freedom from detention.[4] Rather, "[j]udges throughout the Ninth Circuit have repeatedly held . . . 'that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds — pursuant to the Government's affirmative decision not to detain him — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process." Ruiz Tellez v. United States Gen. Att'y, 2026 WL 2654571, at *2 (E.D. Cal. Sept. 9, 2026) (quoting Norberto C.M. v. Warden, Central Valley Annex, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026)); see also Cao v.

---

[4] As Judge Breyer recently noted in addressing a similar argument:

> [T]he government's reasoning has troubling implications when stripped down to its essentials: under their framework, a person's interest in being free would depend on the government first depriving them of that freedom. . . . That cannot be right. . . . While this Court does not doubt that the decision to release an immigrant from custody can create a liberty interest, it strains credulity to imagine that this is the only route to such an interest. An interest in liberty that could only be bestowed by the government would provide little comfort to those seeking protection from its abuses.

Chaparro Ayala v. Albarran, 2026 WL 2722780, *4 (N.D. Cal. 2026) (emphasis in original).

Johnson, 2026 WL 2751379, at *1 (C.D. Cal. Sept. 16, 2026) ("[F]or constitutional purposes, there should be no material difference between an alien released from detention by immigration authorities and an alien whom immigration authorities previously chose not to detain." (citing Kharitonova v. Albarran, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026))).

Petitioner arrived in the United States most recently in 2021, applied for asylum in July 2022, and was subsequently granted employment authorization and informed he could remain in the United States until his asylum application was decided, which had not occurred when ICE officers arrested him in October 2025. "Although the government did not detain and then release [Petitioner], it made a decision not to detain [him] in the first place; Petitioner thus has the same liberty interest in [his] continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441, at *2; see also Yao v. Janec[k]a, 2026 WL 2666861, at *4 (C.D. Cal. Sept. 10, 2026) ("Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief.").

Because Petitioner therefore has a protected liberty interest in remaining out of custody, the Court applies the following three-part test established in Mathews v. Eldridge, 424 U.S. 319 (1976),

to determine whether the government's procedures were constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, Petitioner has a significant liberty interest because he lived with his wife and young daughter for about four years while his asylum application was pending before USCIS, and he worked and established substantial family and community ties during that time. See also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Troykalo v. Armant, 2026 WL 2602910, at *4 (C.D. Cal.

Sept. 2, 2026) ("Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in 2016 and filed his asylum application in 2017, Respondents 'made a decision not to detain [him]' during the pendency of his application. Hence, for nearly nine years, Respondents, with 'full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings.' This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" (citations omitted) (alterations and emphasis in original)). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Tzoc v. LaRose, 2026 WL 2227161, at *4 (S.D. Cal. Aug. 3, 2026) ("Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce

that risk.”). Therefore, the second Mathews factor favors Petitioner.

“Third, courts have routinely recognized that the Government’s interest in detaining individuals like Petitioner without a hearing is ‘low.’” Abdeltawab v. Armant, 2026 WL 1045564, at *3 (C.D. Cal. Apr. 13, 2026) (citations and emphasis omitted); see also Troykalo, 2026 WL 2602910, at *5 (“Respondents’ interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal.”). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing. See also Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, “the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.”); Zhou v. Janec[k]a, 2026 WL 2365550, at *6 (C.D. Cal. Aug. 14, 2026) (“Because each of the Mathews factors favors Petitioner’s bid for pre-deprivation process, the Court finds that Petitioner’s detention — which was accompanied by no process — violates the Due Process Clause.”).

Additionally, even if Petitioner had lacked a right to such pre-deprivation procedures, his detention remains unlawful because he was deprived of a proper detention hearing after being detained, as well. Petitioner’s detention indisputably is governed by 8 U.S.C. § 1226(a), see Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) (holding that noncitizens “present without

admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) (§ 1226(a) governs detention during pendency of removal review process), which makes detention "discretionary" and "provides for release on bond or conditional parole," Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023). Yet, when Petitioner was finally provided a detention hearing on March 25, 2026, after more than five months of detention, the immigration judge (or "IJ") unlawfully determined that he lacked jurisdiction to grant release on bond under Yajure Hurtado, 29 I. & N. Dec. 216 (see Petition Ex. B), despite that this Court had previously vacated Yajure Hurtado on February 18, 2026, in the class action Maldonado Bautista v. Santacruz, 820 F. Supp. 3d 1016 (C.D. Cal. 2026).[5]

---

[5] In Yajure Hurtado, the BIA held that individuals who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and are categorically ineligible for a bond hearing. In Bautista, this Court determined that noncitizens who entered the United States without inspection are subject to discretionary detention under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), and are therefore entitled to bond hearings. See Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1101-06 (C.D. Cal. 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), appeal filed, 9th Cir. Case Nos. 25-7958, 26-1044. On March 31, 2026, the Ninth Circuit granted the government's motion for a stay pending appeal of the district court's February 18 order vacating Yajure Hurtado and the December 18 class certification order and final judgment, to the extent the latter orders extended beyond this District, but the district court's judgment in Bautista remained in place as to this District. See 9th Cir. Case No. 26-1044, Dkt. No. 17. A few months later, on July 30, 2026, the Ninth Circuit held in Rodriguez Vasquez that noncitizens "present without admission who are apprehended in the interior of the United States are subject to

Although Petitioner was provided another hearing about a month later, on April 28, 2026, the IJ failed to apply the appropriate standard in denying bond.[6] (See Petition Ex. C). The IJ determined that Petitioner did not merit release on bond because he posed a flight risk, a finding the IJ based on (1) Petitioner's "history and pattern of violating the rules" as shown by his illegal entries into the United States in 2015 and 2021 and his driving without a license; and (2) the "speculative" potential of being granted relief from removal on his asylum petition (the denial of which is pending before the BIA) or his wife's I-130 visa petition. (Id. at 1-2). First, the IJ's reliance on Petitioner's illegal entries is inappropriate, as it would result in mandatory detention for essentially all noncitizens covered by the Ninth Circuit's holding in Rodriguez Vazquez and thus would effectively undermine that

---

the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th at 1165.

[6] As indicated above, the April 28 hearing was provided in accordance with this Court's injunction in Rodriguez v. Holder, Case No. CV 07-03239-TJH (RNB), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), which requires bond hearings after six months of detention at which the government must bear the burden to justify continued detention by proving by clear and convincing evidence that the noncitizen is a flight risk or danger to the community.

Although this Court cannot reweigh the evidence or second-guess the IJ's findings of fact and discretionary determinations regarding detention or bond, see 8 U.S.C. § 1226(e), it is authorized to review the IJ's decision under an "abuse of discretion" standard to assess whether the IJ "applied the correct legal standard." Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024); see also Villa v. Mullin, 834 F. Supp. 3d 957, 963 (C.D. Cal. 2026) ("[T]he Court finds that the foregoing findings regarding the reliance upon improper reasons for denying bond by the IJ does fall within the limited setting in which a federal district court may review constitutional challenges to an IJ's detention determination under Martinez, 124 F.4th at 781-84.").

decision and § 1226(a)'s provisions for discretionary detention. See also Santiago Morales v. Mullin, 2026 WL 2678274, at *6 (C.D. Cal. Sept. 11, 2026) ("A decades-old history of simply entering the United States without permission, or trying to, has been held to be 'legally insufficient to establish a current flight risk that is unmanageable by release on bond.'"); Tiboko-Tifuh v. Noem, 2026 WL 1603795, at *2 (S.D. Cal. June 4, 2026) (noncitizen's illegal entry "does not meaningfully distinguish her as unreliable or likely to evade law enforcement" and is insufficient "to support a reasonable inference of Petitioner's tendency toward future nonappearance" absent other, individualized evidence of past noncompliance). Meanwhile, driving without a license, for which Petitioner was convicted once, in June 2023 (see Petition ¶ 42, Ex. J), has little if any bearing on Petitioner's risk of flight. See also Ariel D.L. v. Warden, 2026 WL 3228444, at *3 (E.D. Cal. Oct. 28, 2026) ("While criminal history is relevant to bond determinations, the Court is unconvinced that an alleged violation as minor as driving without a license could support finding Petitioner such an intolerable flight risk that he must remain in the custody of the federal government pending immigration proceedings."). The IJ also failed to explain how the low likelihood of success on his petitions for immigration relief would make him significantly likely to abscond, when considered alongside other pertinent facts. See, e.g., Gonzalez Reyes v. Rios, 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026) ("Although an immigration judge may consider the likelihood of receiving relief based on specific facts presented in a particular case, the judge here did not explain how the relative strengths or weaknesses of

Petitioner's claims for relief outweighed the specific circumstances presented in this case. . . . [T]he immigration judge provided no rationale as to why Petitioner would . . . be more likely to flee rather than appear in immigration court to pursue his claims for relief from removal proceedings."); N.A. v. Warden, Adelanto Det. Facility, 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026) (IJ "cannot simply presume that unresolved claims are 'speculative' and indicative of flight risk" without a showing that this would "make the noncitizen unlikely to appear at future court proceedings").

As noted above, Petitioner has lived in the United States with his wife and young daughter for over four years, and he has worked and established substantial family and community ties. In support of bond, he presented the IJ with supporting evidence including family, counseling, employment, financial, community, and traffic-disposition records, demonstrating among other things that his family had a fixed address and his wife had a $90,000 income. (Petition ¶ 72). By overlooking these individualized facts and relying instead on general considerations common to many, if not most, § 1226(a) detainees, the IJ failed to apply the proper standard to determine whether Petitioner merits release on bond. See also Fletes-Velasquez v. Hernandez, 2026 WL 1871890, at *4 (W.D. Wash. June 30, 2026) ("A minimal hope of a favorable result in removal proceedings, an inability to legally work, and a reluctance to file income tax returns are present for most immigration litigants without lawful status and, were they a sufficient basis for continuing to detain noncitizens who are

seeking relief from removal, then almost no one would be entitled to release. The statute enacted by Congress, however, envisions conditional release on bond even for those who cannot work and/or are unlikely to obtain a favorable decision in removal proceedings or on appeal, and the role of both the immigration judge and this Court is to enforce the law." (citations omitted)).

Accordingly, as Petitioner has been detained for over a year without being provided with constitutionally adequate procedures, immediate release is warranted. See, e.g., Kositsin v. Santacruz, 2026 WL 2866467, at *4 (C.D. Cal. Sept. 23, 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process" and he is entitled to be released from custody); Fletes-Velasquez v. Hernandez, 2026 WL 1871890, at *4 (W.D. Wash. June 30, 2026) (similarly ordering immediate release where IJ abused discretion in finding petitioner a flight risk, and the court found no evidence of flight risk and no lawful basis for continued detention); Vasquez Lopez v. Hernandez, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (similarly ordering immediate release where continued custody did not serve an immigration purpose after IJ abused discretion in finding that petitioner posed a flight risk and danger to the community).

**ORDER**

The Court therefore GRANTS the Petition (Dkt. No. 1) and ORDERS Respondents to release Petitioner Victor M. Cardenas Ramirez (A# 240-799-366) from immigration detention immediately. Respondents also shall file a “Notice of Release” within three days of the date of this Order. Additionally, Respondents are enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations. Petitioner’s Motion for OSC (Dkt. No. 7) is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 23, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE